UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JUAN CARLOS BUENO ANGULO,

Petitioner,

v.

KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,

Respondents.

Case No.:  3:26-cv-00256-RBM-JLB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Docs. 1, 2]**

Pending before the Court are Petitioner Juan Carlos Bueno Angulo's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") (Doc. 1) pursuant to 28 U.S.C. § 2241 and Motion and Memorandum of Law in Support of Temporary Restraining Order ("TRO Motion") (Doc. 2).  For the reasons set forth below, the Petition is **GRANTED**.

## I.    BACKGROUND

**A.    Factual Background**

Petitioner is a native and citizen of Cuba.  (Doc. 7-1, Declaration of Deportation Officer Jose Barrios ("Barrios Decl.") ¶ 3.)[1]  On or about December 30, 1994, Petitioner unlawfully entered the United States.  (*Id.* ¶ 4; Doc. 1 at 25–27, Declaration of Juan Carlos

---

[1]  The Court cites the CM/ECF electronic pagination unless otherwise noted.

1

3:26-cv-00256-RBM-JLB

Bueno Angulo ("Angulo Decl.") ¶ 1.)  About five years later, Petitioner was convicted of sexual assault.  (Barrios Decl. ¶ 5.)  "On or about May 22, 2000, Petitioner was transferred into [Immigration and Customs Enforcement ("ICE")] custody following his release from state custody."  (*Id.* ¶ 6.)  That same day, Petitioner was served with a Notice to Appear charging him as inadmissible under the Immigration and Nationality Act for being present in the United States without having been admitted or paroled and for being convicted of a crime involving moral turpitude.  (*Id.*)  On September 21, 2000, an immigration judge ordered Petitioner removed to Cuba.  (*Id.* ¶ 7; Angulo Decl. ¶ 2.)

Petitioner was released from ICE custody on an Order of Supervision on November 5, 2021.  (Barrios Decl. ¶ 8; Angulo Decl. ¶ 2.)  "Petitioner was taken into ICE custody in 2006, 2015, and 2018, due to criminal apprehensions and each time was released from ICE custody on order of supervision because ICE was unable to obtain a travel document to Cuba."  (Barrios Decl. ¶ 9.)  On October 28, 2025, Petitioner was re-detained to effectuate his removal order.  (*Id.* ¶ 10.)  "Petitioner was provided written notice of revocation of release" but "was not provided with an informal interview."  (*Id.*)  On October 31, 2025, Cuba declined to accept Petitioner for repatriation.  (*Id.* ¶ 11.)

After Cuba refused to accept Petitioner, ICE identified Mexico as a third country for removal.  (*Id.* ¶ 12.)  Petitioner was not removed to Mexico, but the Parties dispute why. (*Compare* Angulo Decl. ¶ 6 ("Before I crossed the line to go to Mexic[o], an ICE agent told me that Mexico would not accept me because of my medical condition.  I was sent back to the detention center.") *with* Barrios Decl. ¶ 13 ("Petitioner was transported to the San Ysidro Port of Entry and ICE requested that he depart the United States by walking through the Port of Entry.  But he refused.").)

Since then, "ICE has worked diligently to effectuate his removal to an alternate country."  (Barrios Decl. ¶ 14.)  ICE is "still in the process of identifying another third country that may be willing to accept Petitioner for removal," and on January 14, 2026 submitted "a request to [Removal and International Operations ("RIO")] for an update on the travel document request."  (*Id.* ¶¶ 15–16.)

3:26-cv-00256-RBM-JLB

**B.       Procedural Background**

On January 15, 2026, Petitioner filed the Petition (Doc. 1) and the TRO Motion (Doc. 2).  The next day, the Court ordered Respondents to show cause why the Petition and TRO Motion should not be granted by filing a written response.  (Doc. 3.)  On January 26, 2026, Respondents filed their Response in Opposition to Petitioner's Habeas Petition and Motion for Temporary Restraining Order ("Response").  (Doc. 7.)  That same day, Petitioner filed his Traverse ("Reply").  (Doc. 8.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.    DISCUSSION

Petitioner argues that his detention violates the regulations in 8 C.F.R. §§ 241.4(l) and 241.13(i); the Fifth Amendment's Due Process Clause; and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (Doc. 1 at 9–17.)  Petitioner also claims that due process and the Convention Against Torture ("CAT") prohibit Respondents from removing him "to a third country without adequate notice and an opportunity to be heard." (*Id.* at 17–21.)

Respondents argue that: (1) "[t]o the extent Petitioner is challenging ICE's decision to detain him for the purpose of removal, such a challenge is precluded" by 8 U.S.C. § 1252(g); (2) even if Respondents violated the applicable regulations, Petitioner "has not established prejudice nor a constitutional violation;" (3) ICE has worked expeditiously to

3

effectuate Petitioner's removal such that "it would be premature to conclude that there is no significant likelihood of removal in the reasonably foreseeable future;" and (4) Petitioner's concerns regarding third country removal are "not borne out by the evidence in this case" because ICE has attested it "will provide Petitioner with written notice, and if Petitioner claims a fear of removal to the identified country, he will be referred to an asylum officer for processing of the fear-based claims." (Doc. 7 at 4–8.)

For the reasons discussed below, the Court finds that: (1) jurisdiction is not precluded by 8 U.S.C. § 1252(g); (2) Respondents violated the regulations in 8 C.F.R. §§ 241.4(l) and 241.13(i); and (3) Respondents must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country.

**A.    Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits," *Lance v. Coffman*, 549 U.S. 437, 439 (2007), it will first address Respondents' argument that 8 U.S.C. § 1252(g) precludes jurisdiction. (Doc. 7 at 7–8.)

The Court has consistently rejected this argument, *see, e.g.*, *Constantinovici v. Bondi*, — F. Supp. 3d —, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025), and does so again here for the same reasons. Petitioner "challenges only violations of ICE's mandatory duties under statutes, regulations, and the Constitution." (Doc. 8 at 10.)  He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, — F. Supp. 3d —, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025) (emphasis in original).  *See also United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority").  Therefore, § 1252(g) does not strip the Court of jurisdiction.

/ / /

/ / /

4

**B.    Agency Regulations**

Petitioner challenges his detention as unlawful based on ICE's decision to revoke his release without providing the required prompt interview.  (Doc. 1 at 9–11.) Respondents concede that Petitioner did not receive an interview but argue that the regulatory violation did not prejudice Petitioner.  (Doc. 7 at 6–7.)

The Court has consistently rejected Respondents' argument here as well, most recently in *Kerota v. Noem*, Case No. 3:26-cv-00140-RBM-BLM, 2026 WL 183858, at *3–4 (S.D. Cal. Jan. 23, 2026).  The Court incorporates its reasoning in *Kerota* here and arrives at the same conclusions: (1) Respondents violated §§ 241.4 and 241.13 by not providing Petitioner a prompt informal interview; (2) this violation implicates due process concerns even without a prejudice inquiry; and (3) even if that were not the case, Petitioner suffered sufficient prejudice.  *See id.*

Government agencies are required to follow their own regulations.  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).  Most district courts have "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. LaRose*, — F. Supp. 3d —, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025); *see, e.g., K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations").  Because Respondents violated the prompt interview requirement in 8 C.F.R. §§ 241.4 and 241.13, the Petition is **GRANTED**.

**C.    Third Country Removal**

Petitioner also claims that "ICE's policies threaten his removal to a third country without adequate notice and an opportunity to be heard," in violation of the Fifth Amendment and CAT.  (Doc. 1 at 18–21.)  Respondents claim that Petitioner's concern "is not borne out by the evidence in this case" because ICE attests that it "will provide Petitioner with written notice, and if Petitioner claims a fear of removal to the identified country, he will be referred to an asylum officer for processing of the fear-based claims."

(Doc. 7 at 6.)  Because Respondents actively seek to remove Petitioner to a third country (*see* Barrios Decl. ¶¶ 15–16), the Court disagrees with Respondents.

Petitioner attaches as an exhibit the July 9, 2025 memo from ICE Director Todd Lyons ("ICE memo") titled "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No. 24A1153 (U.S. June 23, 2025)." (Doc. 1 at 29–30.)  The Court previously explained that, "[a]s several courts have held, the policies in the ICE memo are 'contrary to Ninth Circuit precedent.'"  *Azzo v. Noem*, Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025) (quoting *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025).  In *Azzo*, the Court also analyzed "how the policies in the [ICE memo] present due process issues."  2025 WL 3535208, at *7–8 (citation omitted).  The Court incorporates its reasoning in *Azzo* here and reaches the same conclusion: Petitioner must be provided adequate notice and an opportunity to be heard before being removed to a third country.

## IV.    CONCLUSION[2]

For the foregoing reasons, the Petition (Doc. 1) is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.

2. Respondents **SHALL NOT** re-detain Petitioner absent compliance with the requirements in 8 C.F.R. §§ 241.4 and 241.13, which include, at a minimum, pre-deprivation notice describing the change of circumstances justifying Petitioner's re-detention and a prompt informal interview.[3]

---

[2]  In light of the Court's Order, the Court does not address the Petition's *Zadvydas* claim. Because this claim is the only one for which the factual dispute discussed above (*see supra* Section I.A) is relevant, the Court finds that no evidentiary hearing is necessary.

[3]  *See Espinoza v. Kaiser*, Case No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025).

3:26-cv-00256-RBM-JLB

3. Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025).[4]

4. The TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE:  January 28, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[4] This relief has been granted in similar matters. *See Louangmilith v. Noem*, — F. Supp. 3d —, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025); *Y.T.D.*, 2025 WL 2675760, at *13; *Kumar v. Wamsley*, CASE NO. C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025).

3:26-cv-00256-RBM-JLB